UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 12-24338-CIV-LENARD

PARC PLACE DEVELOPMENT, LLC,
a Florida limited liability company,

    Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,
a Delaware corporation;

    Defendant.              /

## AMENDED COMPLAINT[1]

Plaintiff, Parc Place Development, LLC ("**Parc Place**") sues Defendant, Lexington Insurance Company ("**Lexington**"), and alleges:

## NATURE OF THE ACTION

1.    This is an action by Plaintiff, Parc Place against Defendant, Lexington for breach of a commercial property insurance policy arising from a covered fire loss which occurred at Parc Place's condominium building on May 7, 2008.

## PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff, Parc Place is a Florida limited liability company and is otherwise *sui juris*.

3.    Defendant, Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts. At all times material, Lexington was and continues to be engaged in business in the State of Florida and is subject to this Court's personal jurisdiction.

4.    This Court has subject matter jurisdiction over Parc Place's cause of action

---

[1] This Amended Complaint is being filed by Parc Place as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B).

alleged herein against Lexington pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and Parc Place's damages exceed $75,000.00 exclusive of interest, costs, and attorneys' fees.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Parc Place's claim occurred in this judicial district; and (b) the property which is the subject of this action is situated in this judicial district.

## GENERAL ALLEGATIONS

**A.     The Project.**

6.     Plaintiff, Parc Place was formed in connection with the construction and development of a new, mid-rise boutique luxury condominium building in South Beach consisting of fifty two (52) designer residences, known as "Parc Place Condominiums" (the "**Condominium**").  The project consisted of three components: (1) a parking garage which is joined with an existing garage which is owned by another entity; (2) retail space; and (3) the Condominium.

7.     At the time that the covered loss which is the subject of this action occurred, Parc Place owned the Condominium, which at that time was unoccupied and was in the process of being constructed.  The Condominium is located at 2000 Collins Avenue in Miami Beach, Florida (the "**Real Property**").

**B.     The Policy.**

8.     In February 2006, Lexington issued a Commercial Property Policy in favor of 4B's Collins Avenue Realty LLC, as the named insured, covering the period February 28, 2006 through February 28, 2008 (the "**Policy**").  A copy of the Policy is attached hereto as **Exhibit**

2

"**A**" and is incorporated herein by reference.

9.      Thereafter, through a series of written endorsements to the Policy (the "**Endorsements**"), the term of the Policy was repeatedly extended such that the insurance coverage provided under the Policy ultimately expired as of November 1, 2009. A copy of the Endorsements is attached hereto as Composite **Exhibit "B"** and is incorporated herein by reference.

10.     The Policy insured the Condominium and the Property against all risks of physical loss, including damage caused by fire. The Policy states:

> This policy, subject to the terms, exclusions limitations and conditions contained herein or endorsed hereto, insures against all risks of direct physical loss of or damage to insured property while at the location of the **INSURED PROJECT\*** while in offsite temporary storage or while in inland transit, all within the policy territory and occurring during the term of this policy.
>
> \*     \*     \*
>
> **A. <u>At the location of the INSURED PROJECT\*:</u>**
>
> (1) Permanent Works – All materials, supplies, equipment, machinery, and other property of a similar nature, being property of the insured or of others for which the insured may be contractually responsible, the value of which has been included in the estimated value of the INSURED PROJECT\* in the DECLARATIONS, all when used or to be used in or incidental to the demolition of existing structures, site preparation, fabrication or assembly, installation or erection or the construction of or alteration, renovation, rehabilitation of the **INSURED PROJECT\***.
>
> (2) Temporary works – All scaffolding, form work, fences, shoring, hoarding, falsework and temporary buildings all incidental to the project and the value of which has been included in the estimated value of the **INSURED PROJECT\*** in the DECLARATIONS.

11.     The Policy includes a Delay in Completion Endorsement (the "**Delay Endorsement**"), Section 1 of which states:

3

In consideration of the additional premium charged and subject to all terms, conditions, limitations and exclusions of this Endorsement and of the Policy to which this Endorsement is attached, this Policy is extended to indemnify the Insured, specified in the Delay In Completion Endorsement, for Delay in Completion Loss, as defined in this Endorsement, incurred during the Delay, and caused by direct physical loss or direct physical damage to Insured Property during the Period of Insurance, provided such loss or damage is indemnifiable under the Policy to which the Endorsement is attached or would have been indemnifiable except for application of a deductible.

12. The Delay Endorsement insured Parc Place against soft costs and additional expenses which may be incurred in connection with a covered loss; specifically, (a) interest, (b) architect's fees, (c) legal fees, (d) insurance premiums, (e) real estate taxes, and (f) project management expenses.

13. The Delay Endorsement contains a 30-day waiting period deductible (the "**Waiting Period**").  The Policy states: "No liability shall exist unless the **DELAY\*** exceeds the Waiting Period and then the Company's liability shall be for the amount of loss in excess of the stated Waiting Period."

14. Pursuant to the terms of Endorsement No. 3 to the Policy, for purposes of determining any damages which might have been caused by a delay in completion of the construction of the Condominium caused by a covered loss, the Condominium was scheduled to be completed by May 31, 2009 (the "**Scheduled Date of Completion**").

15. The Policy states:

**DELAY**: shall mean the period of time between the Scheduled Date of Completion, as stated in the Declarations, and the actual date on which commercial operations or use and occupancy commenced or could have commenced; however, not exceeding such delay as would result if the loss or damage were repaired or replaced with the exercise of due diligence and dispatch, but in no event exceeding the **PERIOD OF INDEMNITY** stated in the Declarations for all indemnifiable

4

Occurrences combined. The Delay shall not be terminated by the expiration or cancellation of the Policy with respect to indemnity payable hereunder in direct consequence of insured loss or damage occurring prior to such expiration or cancellation.

### C. The Pre-Loss Completion Schedule.

16. The plans for construction of the Condominium included several luxury amenities, including but not limited to a rooftop pool with cabanas and a lounge, which were designed to be situated on the roof level of the multi-level parking structure servicing the Condominium.

17. The development and construction of the Condominium began in September 2007. At that time, the project completion schedule prepared by the General Contractor scheduled the substantial completion date (i.e., the date by which construction of the Condominium would be substantially completed) (the "**Substantial Completion Date**") for March 5, 2009.

18. After construction of the Condominium had begun, the General Contractor prepared an updated project completion schedule which left the Substantial Completion Date unchanged. Pursuant to the updated project completion schedule, the pouring of the concrete the pool deck (the "**Pool Deck Pour**") was scheduled for May 2, 2008.

19. Following the Pool Deck Pour, the General Contractor had scheduled completion of the pool, which consisted of construction of the pool walls, installation of piping and waterproofing, and related work to complete the pool (collectively, the "**Pool Work**"). Pursuant to the updated project completion schedule, the Pool Work was scheduled to be completed by May 5, 2008.

### D. The Loss.

20. By May 7, 2008, the General Contractor had rescheduled the Pool Deck Pour for

May 8, 2008.  The Substantial Completion Date of March 5, 2009, however, had not been affected by this short delay.

21. On the evening of May 7, 2008, the formwork for the garage pool deck caught fire (the "**Fire**"), thereby causing extensive damage to the various elements of the pool deck, including damage to formwork, rebar, scaffolding, falsework, and mechanical and electrical rough-in.

22. Additionally, as a result of the Fire, and the firefighting activities which occurred in connection therewith, various other elements of the Condominium were damaged, including damage to electrical conduits, ductwork, insulation, and drywall shafts.  Consequently, extensive repairs resulting from the Fire and associated firefighting activities were necessary not only with respect to the pool and the pool deck, but also, by way of example, to mechanical shafts serving each floor of the Condominium which sustained water damage as a result of firefighting activities.

23. As a proximate result of damage caused by the Fire and associated firefighting activities, and the ensuing necessary repairs, the City of Miami Beach did not issue a temporary certificate of occupancy for the Condominium (the "**Temporary Certificate of Occupancy**") until November 6, 2009, 159 days after the Scheduled Date of Completion set forth in Endorsement No. 3.

24. As a proximate result of the Fire and associated firefighting activities, and the ensuing necessary repairs, Parc Place incurred delay in completion damages in the nature of soft costs, including losses as to the following items: (a) interest; (b) architect's fees; (c) legal fees; (d) insurance premiums; (e) real estate taxes; (f) project management costs; (g) marketing and sales costs; (h) operating reserve costs; (i) preconstruction costs; (j) utilities and operating

expenses; and (k) other soft costs. The soft cost losses sustained by Parc Place are in the millions of dollars.

E. **The Claim.**

25. After the Fire, Parc Place promptly reported the Fire to Lexington and made claims against the Policy reflecting Parc Place's delay in completion losses from the Fire (the "**Claim**"). The Claim was made for soft costs losses resulting from the delay in completion of the Condominium caused by the Fire.

26. Pursuant to the terms of the Policy, the Fire is a covered loss.

27. From that time that Parc Place first reported the Fire to Lexington until approximately January 2011, Lexington and its adjuster engaged in a lengthy investigation of the Claim.

28. On January 20, 2011, Lexington denied the Claim (the "**Claim Denial**"). The Claim Denial was premised on Lexington's unsupportable and factually inaccurate conclusion that the Fire did not cause the delay in completing the Condominium and, instead, the actual delay in completing the Condominium had been caused by various delays, impacts, change orders, and late installations which were unrelated to the Fire.

29. Due to the Fire, the associated firefighting activities, the ensuing repairs to the Condominium, and the delay in completing the Pool Deck Pour and Pool Work, the completion of the Condominium was delayed by 159 days. The delay was caused not only by construction activities which could not be timely performed as a proximate result of the Fire, such as the Pool Deck Pour and Pool Work, but also by necessary repairs to elements of the Condominium which had already begun to be constructed or had been completed at the time the Fire occurred. All of these repairs and remedial activities delayed the issuance of the Temporary Certificate of

Occupancy by the City of Miami Beach.

30. Accordingly, Lexington's Claim Denial was made in bad faith and constituted a breach of Lexington's contractual obligations under the Policy.

31. Lexington failed to attempt in good faith to settle the Claim. Under all circumstances, as alleged herein, Lexington could and should have settled the Claim, had Lexington acted fairly and honestly toward Parc Place and with due regard for Parc Place's interests.

32. All conditions precedent to the maintenance of this action have occurred, been performed, or have otherwise been satisfied or waived.[2]

## COUNT I
## BREACH OF CONTRACT

Plaintiff, Parc Place readopts and realleges its allegations set forth in paragraphs 1 through 32 above as if fully set forth herein.

33. This is an action by Parc Place against Lexington for Breach of Contract arising from Lexington's breach of its obligations to Parc Place under the Policy and the applicable Endorsements.

34. By virtue of the provisions of the applicable Endorsements, at the time that the Fire occurred, the Policy constituted a valid and binding written insurance agreement between Lexington, the insurer, and Parc Place, the insured.

35. Following receipt of Parc Place's Claim, Lexington breached its contractual obligations to Parc Place under the Policy as follows:

    a. By wrongfully and without justification denying coverage under the

---

[2] Parc Place hereby reserves its right to seek to amend this Complaint at the appropriate time to add a claim against Lexington pursuant to Fla. § 624.155 based upon Lexington's bad faith denial of the Claim.

8

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., SUITE 1700, MIAMI, FL 33131  305.379.9000

    Policy of Parc Place's valid, appropriate, and covered Claim;

  b. By failing to settle the Parc Place's valid, appropriate, and covered Claim or any portion thereof under the Policy; and

  c. By failing to timely pay Parc Place proceeds under the Policy based upon Parc Place's valid, appropriate, and covered Claim.

36. As a proximate result of Lexington's breach of its contractual obligations to Parc Place under the Policy, Parc Place suffered damages. Parc Place's damages include but are not limited to the delay damages measured as the difference between date that the Temporary Certificate of Occupancy was issued (159 days) minus the Scheduled Date of Completion, and minus the Waiting Period (129 days).

**WHEREFORE**, Plaintiff, Parc Place Development, LLC demands judgment against Defendant, Lexington Insurance Company for damages plus interest and costs, along with such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable as of right.

Dated: January 18, 2013.

    **KLUGER, KAPLAN, SILVERMAN,**
    **KATZEN & LEVINE, P.L.**
    *Attorneys for Plaintiff, Parc Place Development, LLC*
    17th Floor Miami Center
    201 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 379-9000
    Facsimile: (305) 379-3428

    By: /s Casey H. Cusick
     **ALAN J. KLUGER**
     Fla. Bar No 200379
     *akluger@klugerkaplan.com*
     **CASEY H. CUSICK**
     Fla. Bar No. 755931
     *ccusick@klugerkaplan.com*

10

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 18, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing (NEF) generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  /s Casey H. Cusick
Casey H. Cusick

## SERVICE LIST

Ira S. Bergman, Esq.
Fla. Bar No. 980900
ibergman@moundcotton.com
Jason M. Chodos, Esq.
Fla. Bar No. 025823
jchodos@moundcotton.com
Mound Cotton Wollan & Greenglass
101 N.E. Third Avenue, Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 467-5800
Facsimile: (954) 467-5880
***Counsel for Defendant, Lexington Insurance Company***